**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LELAND BROWDEN, | Case No. 1:24-cv-00418 JLT CDB |
| Plaintiff, | ORDER GRANTING MOTION TO COMPEL ARBITRATION |
| v. | (Doc. 7) |
| CJ BERRY WELL SERVICES MANAGEMENT, LLC, et al. | |
| Defendant. | |

Leland Browden alleges in this action that his former employer, CJ Berry Well Services Management, LLC, violated California laws protecting workers and business competitors.  CJ Berry argues Browden agreed to arbitrate disputes of this type, and it moves to compel arbitration.  As explained in this order, that motion is **GRANTED**, and the case is **STAYED** until the arbitration is complete.

**BACKGROUND**

Browden previously worked for CJ Berry in California.  (Doc. 1-1 at 6.)  He claims in this case that the company violated the California Labor Code and Business and Professions Code, citing missed meal and rest breaks, unpaid wages, and unreimbursed expenses, among other similar wage and hour violations.  (*See id.* at 7–25.)  He proposes to litigate on behalf of a class of other employees with similar claims.  (*See id.* at 3–6.)

1

The case was originally filed in state court, and CJ Berry removed the case to this court under 28 U.S.C. §§ 1332(d) and 1441. (*See id.* at 4–17.) The company now moves to compel arbitration of Browden's claims on an individual basis, and it asks the Court to stay this case while the arbitration is pending. (Doc. 7.) Its motion is based on a change to the company's employee handbook, which went into effect during the time Browden was working. (*See* Doc. 7-1 at 11.) The company announced the change in an email, which instructed employees to acknowledge electronically through a separate online system that they had received, read, and would comply with the company handbook. (*See id.* at 2, 11.) The email also made clear that the handbook included a "Dispute Resolution Policy." (*Id.* at 11.) The company attached excerpts from the handbook to its motion. (Doc. 7-1 at 5, 13–24.) On the first page, immediately before the table of contents, are several introductory paragraphs. (*Id.* at 14.) Among other things, this introductory text distinguishes the dispute resolution policy from the bulk of the handbook's provisions by describing the dispute resolution policy as "a binding agreement." (*Id.* at 14.)

The dispute resolution policy itself is found on the tenth page of the handbook and is made up of about six and a half pages of single-spaced text. (*See id.* at 18–24.) It begins with a few lines of boldface text in all upper-case letters, which warn readers that if they do not opt out of the dispute resolution policy, they will waive their right "to have a court hearing, an administrative hearing, a judge or jury trial, and/or bring or participate in a representative action." (*Id.* at 18 (emphasis omitted).)

The section of the dispute resolution policy that follows this warning is a general statement of purposes, including the intention that "mandatory and binding individual arbitration" will be "the sole and exclusive remedy for any formal resolution of all Covered Disputes." (*Id.* at 18.) "Covered Disputes" are defined on the next page as "any and all claims, causes of action, or other disputes or controversies that already occurred, now exist, or arise in the future between [the employee] and the Company." (*Id.* at 19.) As an example of a covered dispute, the policy refers to claims "arising out of or related to . . . [an employee's] employment with or work for the company . . . including any wage and hour issues." (*Id.*) It also covers "issues or arbitrability," including "the formation, interpretation, applicability or enforceability" of the dispute resolution

2

policy, "except to the extent they are Excluded Disputes." (*Id.*) "Excluded Disputes" are defined in the next section. (*See id.*) It lists a variety of claims, such as those "within the jurisdiction of the National Labor Relations Board," those "arising or regulated under federal law for which there is an unwaivable specific statutory or regulatory enactment making such claims not arbitrable," and "disputes regarding the applicability, interpretation, enforceability, and/or severability of the provisions of Section 11, below, including whether such provisions are governed by the Federal Arbitration Act, which must be decided only by a court of competent jurisdiction." (*Id.*) Section 11 in turn defines the phrase "Representative Action." (*Id.* at 21.) Representative actions include class and collective actions. (*Id.*) Employees "cannot bring or participate in a Representative Action in connection with any Covered Disputes." (*Id.*)

In broad strokes, the remainder of the dispute resolution policy describes how claims will be resolved. By way of example, it states that the parties "waive any and all rights to a judge or jury trial"; it defines a process for selecting an arbitrator by mutual agreement; it incorporates the Federal Rules of Evidence and Civil Procedure into the policy by reference, but with limits on the scope of discovery; it makes the "existence, content, and outcome of any arbitration proceedings" confidential; it states that the parties will pay their own costs and attorneys' fees by default, but gives the arbitrator authority to apportion the costs of the arbitration between them; and it defines the Federal Arbitration Act as the governing law. *Id.* at 21–24.) The dispute resolution policy allows employees to opt out of its terms by email or physical mail. (*Id.* at 22.)

According to CJ Berry's records, Browden used his email address and password to log into the company's online system, clicked "OK" on a notification that there documents to review and acknowledge, then came to a page displaying a "Message," which stated that by clicking on "Accept" in the field below, he was applying his "digital signature" and certifying that he understood and would comply with the provisions in the employee handbook. (*Id.* at 6–8.) The message referred expressly to the dispute resolution policy as among those Browden would agree to "comply with." (*See id.*) The company's records show Browden clicked the checkbox to show he accepted the handbook, clicked a link to a copy of the handbook, downloaded the handbook, then confirmed his acknowledgement that he had received the handbook and would comply with

3

it.  (*See id.* at 7–9, 25.)  The company has no records to suggest that Browden opted out of the dispute resolution policy.  (*See* Doc. 7-2 at 3.)

CJ Berry moves to stay this action and compel arbitration under the Federal Arbitration Act (FAA).  (Doc. 7.)  Browden opposes the motion.  (*See* Doc. 9.)  CJ Berry has filed a reply (Doc. 11), and the Court submitted the motion without hearing oral arguments (Doc. 8).  CJ Berry's reply compresses several arguments into footnotes set in smaller, single-spaced text, apparently to ensure those arguments fit within the ten pages permitted by this court's Standing Order.  (*See* Doc. 2-2 at 2.)  Relegating arguments to the margins of a brief in this way is unfair to one's opposition.  The Court's Standing Order warns that the Court may not consider any briefs that exceed its page limits.  (*Id.*)  The Court has therefore disregarded the footnotes in CJ Berry's reply.

## STANDARD OF DECISION

Written arbitration agreements are "valid, irrevocable, and enforceable," under the FAA, "save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  A party to an arbitration agreement may petition a federal district court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  *Id.* § 4.  The Court's task in response to such a motion begins with two "gateway" questions: (1) "whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (2015).  If there is an agreement and it covers the dispute at hand, then the court must enforce the arbitration agreement. *See Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Although these threshold questions are normally for the court to answer, the parties to an arbitration agreement can specify that the arbitrator will answer them instead.  *See Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999–1000 (9th Cir. 2021).  An agreement to so "delegate" threshold arbitrability questions to the arbitrator must be clear and unmistakable.  *Id.*  And because an agreement to delegate is an agreement just the same, a party resisting arbitration may challenge the delegation itself under generally applicable law, as the FAA permits.  *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009–10 (9th Cir. 2023) (citing *Rent-A-Center, West, Inc. v. Jackson*, 561

U.S. 63, 71–74 (2010)).  To do so, the challenger "must mention that it is challenging the delegation provision and make specific arguments attacking the provision in its opposition to a motion to compel arbitration."  *Id.* at 1009.  The challenger may rely on the same or similar reasons to challenge both the delegation and the broader agreement "so long as the party specifies why each reason renders the specific provision unenforceable."  *Id.* at 1009–10.

The Court employs the "ordinary state law principles that govern contract formation" when it decides whether the parties have reached an agreement to arbitrate a particular dispute.  *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014) (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002)).  The court may also consider "generally applicable contract defenses, such as fraud, duress, or unconscionability."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011) (quoting *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  The party moving to compel arbitration bears the burden of demonstrating there is an enforceable arbitration agreement.  *Prostek v. Lincare Inc.*, 662 F. Supp. 3d 1100, 1109 (E.D. Cal. 2023) (citing *Reichert v. Rapid Invs., Inc.*, 56 F. 4th 1220, 1227 (9th Cir. 2022) and *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).  A party opposing arbitration has the burden to demonstrate the claims at issue should not be sent to arbitration.  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 81 (2000); *see also Mortensen v. Bresnan Commc'ns LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013).

**DISCUSSION**

The first question is whether the parties agreed to use the company's dispute resolution policy.  CJ Berry has demonstrated beyond dispute that they did.  As summarized above, the company's records show Browden used his email address and password to log into the online system, then applied his electronic signature to confirm that he had received and would comply with the terms of the company's updated handbook, including its dispute resolution policy.  The handbook stated unambiguously that the dispute resolution policy created a "binding arbitration agreement," in contrast with the other policies within it.  (Doc. 7-1 at 14.)  Browden has not cited evidence that could prove otherwise, and no records suggest he opted out of the dispute resolution policy.  California law recognizes the validity of electronic signatures, and a party cannot deny

5

the "legal effect or enforceability" of a contract "solely because an electronic record was used in its formation." Cal. Civ. Code § 1633.7(a)–(b). California federal district courts have also held that a person can enter an arbitration agreement by confirming their identity and clicking a button to mark their agreement to abide by it, including in the employment context. *See, e.g.*, *Tyler v. Tailored Shared Servs., LLC*, No. 24-01374, 2024 WL 4894589, at *4 (E.D. Cal. Nov. 26, 2024), *aff'd in relevant part*, No. 24-7669, 2025 WL 2938692 (9th Cir. Oct. 16, 2025) (unpublished); *Vargas v. Capstone Logistics, LLC*, No. 24-00712, 2024 WL 5046473, at *1, 2 (E.D. Cal. Nov. 19, 2024); *Costless Wholesale, Inc. v. Amazon.com Servs. LLC*, No. 23-01330, 2023 WL 6224825, at *3 (C.D. Cal. Sept. 20, 2023); *Brackett v. Comcast Cable Commc'ns Mgmt., LLC*, No. 22-00948, 2022 WL 7102349, at *4 (E.D. Cal. Oct. 12, 2022).

Browden's arguments to the contrary rely on unpersuasive analogies to the California Court of Appeal's decisions in *Esparza v. Sand & Sea, Inc.*, 2 Cal. App. 5th 781 (2016) and *Mitri v. Arnel Management Co.*, 157 Cal. App.4th 1164 (2007). In *Mitri*, the company handbook referred to a mandatory arbitration policy but did not itself create an agreement; it implied instead that there would be a separate arbitration agreement to sign. *See* 157 Cal. App. 4th at 1170–71. The handbook also promised to provide employees with a signed copy of that separate arbitration agreement. *See id.* And yet the defendant produced no signed agreement to support its motion to compel arbitration. *See id.* Browden, by contrast, clicked "accept" in response to a message that informed him he was agreeing to comply with the terms of the handbook, including its dispute resolution policy, and he has not cited any provisions within the handbook anticipating a separate agreement. (*See* Doc. 7-1 at 25.) In *Esparza*, the Court of Appeal found the employee handbook did not create an enforceable arbitration agreement, among other reasons because it provided expressly that it did not create a contract or impose any legally enforceable obligations. *See* 2 Cal. App. 5th at 789. The handbook in this case did the opposite, as noted. (*See* Doc. 7-1 at 14.)

Browden contends the dispute resolution policy is unenforceable even if he did agree to it, and he contends this Court must decide whether that is so, not the arbitrator. The company's dispute resolution policy expressly delegates threshold arbitrability disputes such as this to the arbitrator. (Doc. 7-1 at 19.) Browden contends that delegation is itself unenforceable, however,

6

first because it is not clear and unmistakable.  (Doc. 9 at 8–9.)  The Ninth Circuit has held that a delegation meets the "clear and unmistakable" standard if it expressly gives the arbitrator authority to determine "the validity or application of any of the provisions" of the arbitration clause, *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011), or to resolve disputes relating to the "enforceability, revocability or validity of the [arbitration agreement] or any portion of [it]," *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016).  CJ Berry's policy uses equivalent language.  It expressly delegates "issues of arbitrability such as the formation, interpretation, applicability or enforceability" of the dispute resolution policy to the arbitrator. (Doc. 7-1 at 19.)

In Browden's view, this language is not as clear as it may seem at first blush.  He points out the long list of "Excluded Disputes" in the following section and its reference of some such disputes to "a court of competent jurisdiction." (Doc. 9 at 9.)  How is a layperson like himself supposed to know, he asks, whether a given dispute is "within the jurisdiction of the National Labor Relations Board," for example, and thus excluded from the delegation? (*See id.*)  He does not cite any case in which a court has demanded such clarity, and the Court is aware of none.  It may be impossible to achieve the type of clarity he advocates.  Even trained attorneys and experienced jurists have doubted and debated whether a particular law is preemptive or requires litigation in one forum or another.  *Cf. Galvez v. Kuhn*, 933 F.2d 773, 774 (9th Cir. 1991) (referring to the preemptive effects of the Labor Management Relations Act as a tangled and confusing "thicket" through which courts have been forced to "hack" again and again).  It has also long been true that a person who signs a contract is bound by it even if he is "unfamiliar" with its terms.  *Mohamed*, 848 F.3d at 1211 (quoting *Circuit City Stores v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002)).

In any event, Browden has not identified any item on the list of excluded claims that casts doubt on whether the agreement delegates disputes about "issues of arbitrability," such as "enforceability," to the arbitrator.  He does not argue that any excluded claims might plausibly encompass the unconscionability arguments he now raises.  The exclusion's references to courts of "competent jurisdiction" or "the applicable jurisdiction," which Browden does quote, do not

7

make the delegation unclear.  In each instance the agreement explains which types of disputes or claims may or must be litigated in a court, such as by referring specific sections of the agreement (*see, e.g.*, Doc. 7-1 at 11 ("disputes regarding . . . the provisions of Section 11, below")), a limited subject matter (*see id.* ("any disputes as to whether any claims or disputes are Excluded claims")), or types of relief (*see id.* ("claims for temporary or provisional equitable relief")).  (*See* Doc. 7-1 at 11.)  The Court does not disagree with the logic behind Browden's position.  An ambiguous exclusion may very well render a delegation agreement unclear and unenforceable.  *See, e.g.*, *Ireland-Gordy v. Tile, Inc.*, 760 F. Supp. 3d 946, 958 (N.D. Cal. 2024) (discussing conflict in venue provisions); *Hartley v. Superior Ct.*, 196 Cal. App. 4th 1249, 1258 (2011) (discussing conflict in allocation of authority to grant equitable relief).  Browden has simply not demonstrated that this is such a case.

Finally, Browden argues that even if the delegation clause would require him to present his enforceability arguments to an arbitrator, the delegation clause is itself unconscionable and thus cannot be enforced.  (*See* Doc. 9 at 10–14.)  CJ Berry disagrees.  (*See* Doc. 11 at 5–8.)  This dispute is for the Court must resolve.  *See Bielski*, 87 F.4th at 1009–10.

"Under California law, 'unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Mohamed*, 848 F.3d at 1210 (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 99 (2000)).  "Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.'" *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024) (quoting *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019)).  "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to conclude that the term is unenforceable." *Id.* (quoting *OTO*, 8 Cal. 5th at 125).

Browden contends the delegation provision "is procedurally unconscionable because it is in a contract of adhesion," and because it was part of "a lengthy 66 page employee handbook." (Doc. 9 at 10.)  Browden does not dispute that he could have opted out of the dispute resolution policy as a whole, and thus from the delegation provision in particular.  (*See* Doc. 9 at 10.)  The

Ninth Circuit has interpreted California law as providing "that an arbitration agreement is not adhesive if there is an opportunity to opt out of it." *Mohamed*, 848 F.3d at 1211 (citing *Circuit City*, 283 F.3d at 1199). The policy in this case is therefore not a contract of adhesion.

But a contract can be "procedurally unconscionable for reasons other than . . . the adhesive nature of the agreement." *See Swain v. LaserAway Med. Grp.*, 57 Cal. App. 5th 59, 69 (2020). The "pertinent question . . . is whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." *OTO*, 8 Cal. 5th at 126. A variety of factors are relevant:

> (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.

*Id.* at 126–27 (quoting *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348 (2015)).

In this case, Browden had several days to read and review the handbook, dispute resolution policy, and delegation clause. (*See* Doc. 7-1 at 11.) He has cited no evidence showing anyone put pressure on him to accept the policy, misled him or lied to him about it, cut short his review, urged him not to opt out, or made any similar efforts. The most that could be said in this regard is that the policy as a whole expresses a preference for arbitration, and the company was in a stronger bargaining position as the handbook's drafter and Browden's employer. (*See id.* at 18.) Although the handbook is long, the company warned Browden that it included a dispute resolution policy when it asked him to review it, and the handbook included a table of contents directing him to the dispute resolution policy, which begins with a paragraph of boldface, capitalized text explaining its essential consequences. (*See id.* at 11, 15, 18, 25.) Neither party has cited evidence or made arguments about Browden's experience or education. Neither has submitted evidence explaining whether he received assistance from an attorney.

On the whole, these factors show the delegation clause was procedurally unconscionable only to a minimal degree, if at all, especially in light of the time Browden had to read the

handbook and his ability to opt out of the entire dispute resolution policy by sending an email. *See, e.g.*, *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017) (finding minimal procedural unconscionability when signing arbitration agreement was not a condition of employment, among other reasons); *Shamblin v. Andy Frain Servs., Inc.*, No. 23-00605, 2024 WL 1199478, at *3 (E.D. Cal. Mar. 20, 2024) (finding minimal procedural unconscionability based in part on prominent warnings in adhesive agreement). Because the delegation clause is at most minimally unconscionable in the procedural sense, it will be enforceable unless it is highly unconscionable in the substantive sense. *Poublon*, 846 F.3d at 1263.

Browden first argues the delegation clause is substantively unconscionable because it tasks the arbitrator with allocating fees and costs between the parties. (Doc. 9 at 11–12.) This delegation, he contends, deprives him of judicial and appellate review of all cost allocations, even if the arbitrator ultimately imposes the entirety of the company's costs upon him. (*Id.* at 12.) He contends California law would forbid such an award, but that is not necessarily so. In the case he cites, the state supreme court held only that employers may not both impose mandatory arbitration as a condition of employment and force employees to pay more than the "usual costs" they would incur in court. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 110–11 (2000). CJ Berry does not make arbitration a mandatory condition of employment. Browden cites no authority to support his argument that it is unconscionable to task arbitrators with cost allocations, and the Court is aware of none. Persuasive authority from within this district appears to suggest otherwise. *See, e.g.*, *Collins v. Diamond Pet Food Processors of Cal., LLC*, No. 13-00113, 2013 WL 1791926, at *7 (E.D. Cal. Apr. 26, 2013) (rejecting a similar argument).

Second, Browden argues the delegation clause is unconscionable because "it prevents an effective review in any forum of whether the agreement is unconscionable." (Doc. 9 at 12.) On the one hand, the delegation clause tasks the arbitrator with deciding whether the agreement as a whole is unconscionable, as summarized above. (*See id.* at 12–13.) On the other hand, the delegation clause gives courts the duty to decide whether the class, collective, and representative action waivers are unconscionable. (*See id.* at 13.) Browden reads these provisions as

10

improperly preventing both the arbitrator and the courts "from reviewing the whole agreement." (*Id.*)  He cites, as examples, disputes about waivers of the right to bring representative actions under the California Private Attorneys General Act and about requests for public injunctions. (*See id.*)

As CJ Berry points out, these arguments prove too much: they would invalidate any exclusions from any delegation clause and would effectively require the resolution of all enforceability disputes in a single forum.  (*See* Doc. 11 at 12.)  And yet courts have upheld delegation clauses with exclusions or limitations.  (*See id.* (citing *Mohamed*, 848 F.3d at 1209, 1211–12).)  The Ninth Circuit has also held that an arbitration agreement is not unconscionable simply because it waives rights related to representative actions or public injunctions.  *See Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1022–23 (9th Cir. 2024); *Poublon*, 846 F.3d at 1264.  Under California law, this Court must interpret the parties' agreement in a way that makes it "enforceable rather than void."  *Pearson Dental Supplies, Inc. v. Superior Ct.*, 48 Cal. 4th 665, 682 (2010).  It is possible to interpret the delegation clause as permitting the arbitrator or the courts, as the case may be, to consider the dispute resolution policy as a whole when deciding whether any particular provision within that policy is unconscionable.  The policy also includes a severability clause in the event any particular provision is invalid.  (Doc.7-1 at 23.)

Finally, Browden argues the delegation clause is unconscionable because the company has preserved judicial and appellate review selectively to protect its own rights and interests, while cutting off such review when an employee might benefit from it.  (*See* Doc. 9 at 13–14.)  The Court assumes without deciding that there is an imbalance in these exclusions and that the imbalance favors the company.  Browden has not demonstrated that it would render the delegation clause unconscionable to the necessarily high degree, given the minimal procedural unconscionability he has proven.  It does not "shock the conscience" to learn that disputes about class and representative action waivers, public injunctions, and other similar matters will be resolved in a court, but that other disputes, such as those related to enforceability and confidentiality, will be resolved by an arbitrator.  *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910 (2015) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev.*, 55 Cal. 4th

11

223, 246 (2012)).  At most this imbalance is a "bad bargain" from Browden's perspective, and bad bargains are not unconscionable under California law.  *Id.* at 911 (quoting *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013)).

For these reasons, Browden has not demonstrated that the delegation clause is unenforceable.  The parties do not dispute that the dispute resolution policy and delegation clause cover the subject matter of this action.  Browden is therefore bound by his agreement to present his arguments about the unconscionability of the broader dispute resolution policy to an arbitrator.  CJ Berry's motion to compel arbitration is **GRANTED**.

If a court compels arbitration, it must also either stay or dismiss the action to allow arbitration proceedings to occur.  *See* 9 U.S.C. §§ 3, 4.  The action must be stayed, rather than dismissed, if a party requests such a stay, provided that there is no other basis for dismissing the action.  *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024).  CJ Berry requests a stay rather than dismissal.  There does not appear to be any independent reason for dismissal.  CJ Berry's request is therefore **GRANTED**.

**CONCLUSION**

The motion to compel arbitration and stay (Doc. 7) is **GRANTED**.  This action is **STAYED** pending completion of arbitration.  The parties are directed to file a further joint status report within seven days of the date the arbitration concludes, or within seven days of the date the parties otherwise resolve the claims in this action.

IT IS SO ORDERED.

Dated:   **February 11, 2026**

UNITED STATES DISTRICT JUDGE